## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRY AUSAMA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-2513** |
| **TETRA APPLIED TECHNOLOGIES, LP AND CURTIS CALLAIS WELDING, INC.** | **SECTION B(5)** |

### ORDER AND REASONS

Before the Court are Plaintiff's Motion to Strike Defendant's Request for a Jury Trial (Rec. Doc. No. 36), Plaintiff's Motion to Sever for Expedited Trial to Determine Plaintiff's Right to Maintenance and Cure Benefits (Rec. Doc. No. 37), Defendant's Motion to Continue Plaintiff's Motion to Sever (Rec. Doc. No. 40), and Defendant's Motion for Summary Judgment (Rec. Doc. No. 43).  After review of the pleadings, attachments, and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Plaintiff's Motion to Strike is **DENIED**; Plaintiff's Motion to Sever is **DISMISSED AS MOOT**; Defendant C&G Welding's Motion for Summary Judgment is **GRANTED**; and Defendant C & G Welding's Motion to Continue is **DISMISSED AS MOOT**.

Plaintiff is a payroll employee of C & G Welding, Inc. (Defendant).  Plaintiff was working as a welder for Tetra Applied Technologies, LP (Tetra), aboard a vessel under its ownership and/or control, the D/B ARAPAHO, on June 16, 2005.  Defendant provided welding and rigging workers to Tetra as part of a Master Services Agreement.

On June 16, 2005, Tetra was installing a platform on Matagorda Island, block 639-A. Plaintiff alleges on that date, he was directed by one of his Tetra welding supervisors to retrieve his welding lead from the platform's jacket. Plaintiff alleges he fell into a hole in some scaffolding, injuring his neck and back.

Plaintiff filed suit against Defendant and Tetra, alleging Jones Act negligence claims and general maritime law claims of unseaworthiness and maintenance and cure. In the alternative, Plaintiff pleads he is entitled to benefits of the Longshore and Harbor Worker's Compensation Act (LHWCA) and brings claims under Section 905(b) of the LHWCA and general maritime law claims for vessel negligence.

Plaintiff was employed by Defendant from October 4, 2004 until June 16, 2005. During that time, Defendant provided labor services to numerous separate companies in the oil and gas field. Among those were Tetra, McDermott, Frank's Casing, and Houma Industries. Plaintiff worked offshore for two, Tetra and McDermott. Plaintiff worked for Tetra pursuant to a contract between Tetra and Defendant. During that time, Plaintiff worked on offshore platforms. Plaintiff is able to point to only a few occasions in which his work was done on the vessel as opposed to directly on the platform. He was transported to those platforms, ate, and slept aboard the D/B ARAPAHO. Defendant did not own at

any time any vessel on which Plaintiff spent time or worked. During Plaintiff's employment with Defendant, the vast majority of Plaintiff's time was spent with Tetra on the D/B ARAPAHO. However, the assignment was not permanent.  Defendant could and did place Plaintiff in other assignments as needed.

The Supreme Court and United States Court of Appeals for the Fifth Circuit have declined to extend seaman status to employees in similar cases.  *See, e.g.*, *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548 (1997); *St. Romaine v. Indust. Fabrication & Repair Serv.*, 203 F.3d 376 (5th Cir. 2000); *Hufnagel v. Omega Serv. Indus.*, 182 F.3d 340 (5th Cir. 1999); *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (5th Cir. 1980).  These cases have focused on the nature of the relationship between the employee and the vessel in reaching the conclusion that seaman status did not apply.

In *Papai*, the Supreme Court declined to extend seaman status to a worker (Papai) who was injured while painting the housing structure of a tug boat.  520 U.S. at 551.  Papai received his job assignments through a hiring hall.  During his two and one-quarter year history with the hall, Papai worked on various short-term assignments that ranged from a day to 40 days.  The issue before the Court was whether Papai had sufficient employment-related connection to a group of vessels in navigation.  The United States Court of Appeals for the Ninth

circuit found the fact that Papai had worked for the employer on whose vessel he was injured on 12 occasions in the two and one-half months preceding his injuries may provide sufficient connection.  *Id.* at 552.  The Supreme Court reversed.  In doing so, the Supreme Court concluded that the mere use of the same hiring hall that draws from the same pool of employees did not establish the requisite link between an employee and a vessel or group of vessels subject to common control.  *Id.* at 557.

Pursuant to various contracts, Defendant assigned Plaintiff and other workers to perform welding services.  Some assignments were brief; others exceeded a month.  As in *Papai*, "[s]o far as the record shows, each employer was free to hire, assign, and direct workers for whatever tasks and time period they each determined, limited, at most, by the [employer's agreement]." *Id.*  Plaintiff worked two assignments offshore and two assignments onshore.  In the two assignments offshore, Plaintiff was assigned to two different vessels that were not subject to common ownership or control.  Although Plaintiff's assignments aboard the D/B ARAPAHO dominate his work history with Defendant, that alone cannot warrant a finding of seaman status when considered in light of the temporary nature of Plaintiff's assignments and the fact that Defendant "was free was free to hire, assign, and direct workers for whatever tasks and time period" it determined.  Accordingly, this Court is compelled to

4

find as a matter of law, as the *Papai* Court did, that Plaintiff lacks sufficient connection to a vessel or identifiable fleet of vessels to support a finding of seaman status.

The Fifth Circuit reached a similar conclusion in *Hufnagel*, Hufnagel worked for an oil service company that contracted with offshore platform owners to construct and repair offshore platforms. *Hufnagel*, 182 F.3d at 344. The company did not own any vessels, and none of its employees was assigned as crew members to any vessel.[1] During the course of his employment, Hufnagel was assigned to work on 26 different fixed platforms for 13 different customers for time periods ranging from one to twenty-seven days. Under these facts, the Fifth Circuit concluded Hufnagel did not have sufficient connection to any vessel or identifiable group of vessels. *See Hufnagel*, 182 F.3d at 346; *see also St. Romaine*, 203 F.3d 376 (5th Cir. 2000)(applying *Hufnagel* and concluding St. Romaine did not work aboard vessels under common ownership or control). The Fifth Circuit further concluded Hufnagel's duties did not "contribute to the function of the vessel or accomplishment of its mission." *Hufnagel*, 182 F.3d at 347 (quoting *Chandris, Inc. v. Latsis*, 515

---

[1]Plaintiff's Memorandum refers repeatedly to Plaintiff as a member of the D/B ARAPAHO welding crew. See Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, 1-2, 6, 10 (Rec. Doc. No. 49). Plaintiff fails to provide any support, via deposition testimony or employment documents, that Plaintiff was in fact a crew member.

U.S. 347, 368 (1995)).  In reaching that conclusion, the Fifth Circuit noted that Hufnagel's duties related to platform work and not the navigation, maintenance, or voyage of the vessel.  The court found the vessel was there to support repair crew work by providing lodging and a work area.  Plaintiff's relationship to the D/B ARAPAHO was similar of that of the employee to the vessel in *Hufnagel*.

In *Longmire*, the Fifth Circuit found a floorhand who was injured aboard a tender anchored adjacent to a fixed drilling platform was not a seaman.  610 F.2d at 1346-47.  The Fifth Circuit noted that the issue of seaman status "should be addressed with reference to the nature and location of [the seaman's] occupation taken as a whole."  *Id.* at 1347.  In *Longmire*, the employee's primary duties were on the drilling platform.  *Id.* at 1344, 1346.  The employees performed occasional duties on the tender, which supported the drilling platform by providing crew quarters, mess facilities, pumps, electricity, and fuel necessary to operate the drill.  *Id.*  At the time of employee's accident, he was aboard the tender stowing anchor chains.  *Id.*  Despite this fact, the Fifth Circuit concluded the employee was not a seaman:

6

> Longmire's primary responsibilities concerned
> drilling operations on the platform. Because of
> the symbiotic relationship between the tender
> and the drilling platform in this case,
> Longmire's performance of those duties
> necessarily carried him onto the tender from
> time to time. In this regard the vessel was no
> more than a storeroom or warehouse in relation
> to the drilling platform, except for the fact
> that it was afloat rather than affixed to the
> seabed. Longmire's work on the tender also
> occasionally involved general maintenance tasks,
> such as cleaning and painting. These tasks
> aboard the tender, however, were assigned to
> Longmire and others on the drilling crew only
> when there was nothing to do with respect to the
> drilling operation. Longmire's assignment to
> those tasks was irregular and fortuitous,
> entirely dependent upon and subsidiary to the
> progress of the drilling operation.

*Id*. at 1346-47.

In the instant case, Plaintiff's own deposition testimony indicates the jobs he performed for Tetra involved either installing or salvaging offshore platform.  Plaintiff performed most of his work on the platform.  Plaintiff occasionally performed work on the barge when something needed fixing, when weather was bad, or if maintenance would be performed on the barge.  Plaintiff's testimony recounts only three specific work assignments performed on board the D/B ARAPAHO.  As in *Longmire*, Plaintiff's only assignments aboard the vessel were "irregular and fortuitous."  This is insufficient as a matter of law to support a finding of seaman status.

Plaintiff argues he was not working on a fixed platform and was never assigned to work on a fixed platform; he was assigned to work on the D/B ARAPAHO.  However, Plaintiff fails to address the nature of the work performed.  Plaintiff admits he would build and dismantle various platforms.  But in direct contradiction between his deposition and opposition memorandum, he states that he "never worked on the platforms themselves."

Plaintiff argues that *Ardoin v. J. Ray McDermott & Co.* supports denial of summary judgment.  Ardoin was a structural welder who lived, ate, and slept aboard a derrick barge.  *Ardoin*, 641 F.2d 277, 279 (5th Cir. 1981).  Ardoin was working on the jacket of a platform located adjacent to the vessel.  While performing his work, Ardoin injured his back.  *Id.* at 278.  The district court entered summary judgment for the defendant on the issue of seaman status.  The Fifth Circuit reversed, concluding that the nature of Ardoin's work could support a reasonable inference that he had a permanent connection with defendant's fleet of derrick barges.  *Id.* at 279-82.  Plaintiff fails to note significant differences between *Ardoin* and the instant matter. Ardoin was employed directly by the barge operator; while his assignments might change, the changes would have been to other barges owned and operated by the same employer.  Plaintiff is not employed by the barge owner.  He may be on land one day and aboard a vessel the next.  Although Plaintiff may have been assigned to a vessel for a significant period of time, it was

8

solely to work on offshore platforms and he was subject to being reassigned to an unrelated vessel or onshore at any given time. These facts make the instant case readily distinguishable from *Ardoin*, and thus Plaintiff's reliance on the case is misplaced. Accordingly, and for the reasons stated above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 43), relative to Jones Act Status, is **GRANTED.** Further, Plaintiff's related Motion to Sever for Expedited Trial to Determine Plaintiff's Rights to Maintenance and Cure Benefits (Rec. Doc. No. 37) is **DISMISSED AS MOOT** in view of the foregoing ruling against seaman status.

Motions to strike are governed under Federal Rule of Civil Procedure 12(f).  Rule 12(f) requires a motion to strike be filed within 20 days after service of the pleading or by the court sua sponte at any time.  Plaintiff's Motion was filed more than 20 days after service of the relevant pleading.  However, the "grant of judicial discretion 'has been interpreted to allow the court to consider untimely motions to strike and grant them if doing so seems proper. . . .'"  *In re Ha-Lo Indus., Inc. v. J. P. Morgan Partners*, 326 B.R. 116, 123 (Bankr. N.D. Ill. 2005) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1380, at 652-54 (2d ed. 1990)).  Thus, while the Court recognizes that Plaintiff failed to file the instant motion in a timely manner, the Court will consider Plaintiff's request.

Plaintiff contends Defendant has no right to a trial by jury because Plaintiff specifically designated the case to proceed as a Rule 9(h) judge trial.  Plaintiff invoked this Court's admiralty jurisdiction under Rule 9(h) of the Federal Rules of Civil Procedure.  If a plaintiff designates a case under Rule 9(h), that plaintiff is entitled to a bench trial.  *Tucker v. Diamond Offshore (USA), Inc.*, No. 02-2461, 2002 WL 31780165, at *1 (E.D. La. Dec. 10, 2002).  Plaintiff contends he is able to invoke the admiralty side of this Court's jurisdiction because he is a Jones Act seaman.  As discussed above, this Court determined as a matter of law that Plaintiff is not a Jones Act seaman. Plaintiff's pleadings indicate the sole basis for admiralty jurisdiction is Plaintiff's claim he is a Jones Act seaman.

Defendant contends that the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. §1331, *et seq.*, applies to the instant case, that Plaintiff's claims are nonmaritime in nature, and that Defendant is entitled to a jury trial.  This Court agrees.

OCSLA extends U.S. jurisdiction to "the sub-soil and sea bed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the sea bed, which may be erected thereon for purpose of exploring for, developing or producing resources therefrom." *Id.* §1333(a)(1).  To determine whether OCSLA applies to an action for personal injuries, courts engage in a three-part analysis:

> First, the Court must ascertain whether an
> "operation," meaning the doing of some physical
> activity exists upon the Outer Continental Shelf.
> If yes, the Court must, second, examine whether
> the operation, "involves 'exploration,
> development, or production' of minerals." And
> finally, the Court utilizes a "but for" test of
> causation in order to determine whether the
> accident did indeed "arise of, or in connection
> with" the exploration, development, or production
> operation on the Outer Continental Shelf.

*Debellefeuille v. Vastar Offshore, Inc.*, 139 F. Supp. 2d 821,

822-23 (S.D. Tex. 2001) (internal citations omitted).

Here the physical activity was installation of a platform at

Matagorda Island Block 639-A, on the Outer Continental Shelf.

OCSLA defines development as "those activities which take place

following discovery of minerals in paying quantities, including

. . . platform construction."  43 U.S.C. §1331(*l*).  Plaintiff was

involved in the construction of a fixed platform at the time of

the incident.  But for Plaintiff's presence on the platform to

work on its construction, Plaintiff would not have been injured.

Accordingly, this Court finds OCSLA provides the basis for

federal jurisdiction as to Plaintiff's personal injury claims.

However, the inquiry does not end with the determination

that OCSLA applies.  OCSLA does not displace general maritime

law, therefore substantive maritime law governs where both OCSLA

and general maritime law could apply.  *Hufnagel v. Omega Serv.*

*Indus.*, 182 F.3d 340, 350 (5th Cir. 1999).  Therefore, the Court

11

must determine whether maritime law applies.

Admiralty jurisdiction governs a tort claim when the incident giving rise to the cause of action has both a maritime location and a connection to a traditional maritime activity. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); *Strong v. B.P. Exploration & Prod., Inc.*, 440 F.3d 665, 559 (5th Cir. 2006). To satisfy the location requirement, Plaintiff must show that the tort occurred in navigable waters or, if the injury is suffered on land, that it was caused by a vessel in navigation. *Grubart*, 513 U.S. at 534. The connection test requires the Court (1) consider the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce and (2) determine whether the general character of the activity giving rise to the incident shows a relationship to a traditional maritime activity. *Strong*, 440 F.3d at 669. Plaintiff's claims fail both the location and connection tests. Plaintiff's accident occurred on a drilling platform, not navigable waters. *See Rodrigue v. Aetna Cas. & Sur., Co.*, 395 U.S. 352, 355, 360-61 (1969) ("The legislative history of the Lands Act makes it clear that [drilling platforms] were to be treated as island or as federal enclaves within a landlocked State, not as vessels.") Nor was Plaintiff's accident caused by a vessel in navigable waters. Plaintiff's accident also lacks

the required connection to a traditional maritime activity.
Plaintiff was involved in the repair and construction of a fixed
offshore drilling platform, an activity that has been held to
bear no significant relationship to any traditional maritime
activity. *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 425
(1985); *Hufnagel*, 182 F.3d at 351; *Laredo Offshore Constructors,
Inc. v. Hunt Oil Co.*, 754 F2d 1223, 1231 (5th Cir. 1985).
Accordingly, the Court finds Plaintiff fails the both the
location and connections requirements, and thus maritime law does
not apply.

Having concluded OCSLA provides the sole basis for federal
jurisdiction in the instant case, the Court looks to OCSLA to
determine Defendant's right to a jury trial.  Under OCSLA, the
law of the adjacent state applies to the extent it is not
inconsistent with federal law.  *Debellefeuille*, 139 F. Supp. 2d
at 825 n.3.  Plaintiff's injuries occurred adjacent to the coast
of the state of Texas, and are thus governed by Texas law to the
extent it is not inconsistent with federal law.  Both federal and
state law recognize the right to a jury in the instant case.
U.S. CONST. AMEND. VII; TEX. CONST. ART. V, §10 & art. 1, §15;
*Trapnell v. Sysco Food Servs.*, 850 S.W.2d 529, 544 n.12 (Tex.
App. 1992).  Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Strike Defendant's
Request for a Jury Trial (Rec. Doc. No. 36) is **DENIED**.

13

Defendant requested continuance of Plaintiff's Motion to Sever for Expedited Trial to Determine Plaintiff's Right to Maintenance and Cure Benefits.  Defendant requested this to allow additional time to consider Defendant's Motion for Summary Judgment on the issue of seaman status.  The Court considered all Motions submitted at the same time.  Accordingly,

**IT IS ORDERED** Defendant's Motion to Continue (Rec. Doc. No. 40) is **DISMISSED AS MOOT.**


New Orleans, Louisiana, this 1st day of June, 2006.

UNITED STATES DISTRICT JUDGE