UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TERRY AUSAMA                                         CIVIL ACTION

VERSUS                                               NO. 05-2513

TETRA APPLIED TECHNOLOGIES, LP AND                   SECTION B(5)
CURTIS CALLAIS WELDING, INC.

ORDER AND REASONS

Before the Court is Tetra Applied Technologies, LP's (Tetra), Motion for Summary Judgment (Rec. Doc. No. 65). After review of the pleadings, attachments, and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Tetra's Motion for Summary Judgment is **GRANTED**.

This lawsuit results from Plaintiff's injuries that occurred on June 16, 2005, during the construction of a fixed platform on the outer continental shelf. Because Plaintiff's injuries occurred on the outer continental shelf, the Outer Continental Shelf Lands Act (OCSLA) applies. 43 U.S.C. § 1333(b). Under OCSLA, the LHWCA regulates the right of an injured platform worker to receive compensation for his injuries. Id. The LHWCA applies to injuries resulting from operations conducted on the outer continental shelf engaged in for the purpose of exploring for, developing, removing, or transporting by pipeline the natural resources of the subsoil and seabed of the outer continental shelf. Id. In such a situation, the LHWCA is the exclusive remedy of an injured employee

and precludes a suit in tort against the employer. 33 U.S.C. § 905(a). The LHWCA applies to borrowed employees. See Melancon v. Beraud Enters., 834 F.2d 1238, 1243 (5th Cir. 1988).

Courts consider nine factors in determining whether the borrowed employee doctrine applies:

> (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
> (2) Whose work is being performed?
> (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
> (4) Did the employee acquiesce in the new work situation?
> (5) Did the original employer terminate his relationship with the employee?
> (6) Who furnished tools and place for performance?
> (7) Was the new employment over a considerable length of time?
> (8) Who had the right to discharge the employee?
> (9) Who had the obligation to pay the employee?

Melancon, 834 F.2d at 1244. If genuine issues of material fact exist as to any of the above factors, a court decline to grant summary judgment on the issue of borrowed employee status. Robinson v. Apache Corp., No. 04-3225, 2006 WL 622917, at * 7 (E.D. La. Mar. 8, 2006) (finding genuine issues of material fact regarding two of the nine factors required the issue be put before the trier of fact to make a determination).

1. Control over Employee

The control determination requires this Court to distinguish between "authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work

furnished is part of a larger undertaking." Ruiz v. Shell Oil Co., 413 F.3d 310, 313 (5th Cir. 1969). It is undisputed that Plaintiff was employed by C & G. During his employment with C & G, Plaintiff was assigned to various companies to provide welding services. The majority of his time was spent on various assignments for Tetra. During the period at issue here, Plaintiff worked side by side with both C & G and Tetra welders. Plaintiff's own deposition testimony indicates that two of Tetra's employees supervised the welding work done by Plaintiff and were able to require Plaintiff redo any unsatisfactory work. Plaintiff points to deposition testimony in which one of those employees denies being a supervisor, however does not contest that Plaintiff did work according to that employee's directions. Plaintiff further points to the facts that although Plaintiff had been directed by a Tetra employee to do the act that lead to his injuries, neither of the supervisors were present at the time he was injured. The mere absence at the moment of injury does not establish Tetra's lack of control over Plaintiff. Plaintiff was assigned to the job for a one-day assignment, at which point he would be reassigned to some unknown employer by his direct employer C & G. The nature and location of Plaintiff's work assignments were determined by C & G. However, the level of control/supervision exercised over Plaintiff while he was assigned to Tetra (e.g., their instructions regarding where and what duties to perform, their ability to order he redo any unsatisfactory work) supports a finding that Tetra exercised the

requisite control over Plaintiff.  Accordingly, the Court concludes this factor supports a finding of borrowed employee status.

2. Whose Work Was Being Performed?

Both parties agree that Plaintiff was performing the work of Tetra at the time of the incident and thus this factor favors finding borrowed employee status.

3. The Agreement Between Tetra and C & G

Per the terms of their agreement

> [C & G] shall be an independent contractor as to all
> Work.  [Tetra] shall have no control over [C & G] or
> [C & G's] employees, Tetra being only interested in
> the results obtained.  No employee of [C & G] or its
> subcontractor shall be deemed for any purposed to be
> the employee, servant, agent, or representative of
> [Tetra] in the performance of the Work.  [Tetra]
> shall have the general right of inspection of the
> Work and [C & G] shall allow [Tetra] reasonable
> access to the Work in progress at all times.

Master Service Agreement Between C & G and Tetra ¶6(a).  However, the terms of the Agreement alone are not dispositive. "[P]arties to a contract cannot automatically prevent a legal status like 'borrowed employee' from arising merely saying in a provision in a contract that it cannot arise." Melancon, 834 F.2d at 1245.  "The reality at the worksite and the parties' actions in carrying out a contract, however, can impliedly modify, alter, or waive express contract provisions." Id.

For the reasons stated above with respect to Tetra's control over Plaintiff, the Court finds the reality of the relationship between Tetra and Plaintiff at the worksite supports a finding of

borrowed employee status.

### 4. Did Plaintiff Acquiesce to the New Work Situation?

The Court finds this factor favors Plaintiff. The nature of Plaintiff's work was temporary. He could be assigned to any company with a contract with his employer C & G. In as much as Plaintiff was aware that he could be assigned for any given period as required by C & G's contracts, he must be considered to have acquiesced to those assignments. However, as Plaintiff rightly points out, there was no "new work situation" to which he needed to acquiesce. The temporary nature of any of this assignments was understood as part and parcel of his employment with C & G. To construe every new assignment as a "new work situation" ignores the reality of Plaintiff's employment- that Plaintiff continually shifted work locations as needed. Given the nature of Plaintiff's employment, the Court is reluctant to find each shift a "new work situation." See Tanner v. Bunge Corp., No. 03-3243, 2004 WL 2297469, at * 3 (E.D. La. Oct. 12, 2004). Accordingly, as in Tanner, the Court finds this factor weighs against finding borrowed employee status.

### 5. Did the Original Employer Terminate His Relationship with Plaintiff?

It is uncontested that C & G did not terminate its relationship with Plaintiff. However, the mere fact that the employer has not severed the relationship is not dispositve. As the Melancon court noted, "such a requirement would effectively

eliminate the 'borrowed employee' doctrine." 834 F.2d at 1246 (citation omitted). The Melancon court noted that in that case, the original employer's control over the employee was nominal at most. Id. That is clearly distinguishable from the instant case. In Melancon, the employee had been assigned to another employer for approximately five years prior to his injury. Id. at 1241. Given that circumstance, the Fifth Circuit found the employee's connection to the original employer nominal. In the instant case, Plaintiff was routinely reassigned as needed by C & G. The constant throughout was Plaintiff's relationship with C & G. Plaintiff presents a sworn affidavit indicating that relationship would have been assigned to another job either on land, in inland waters, or offshore, for an unknown company. This affidavit clearly indicates C & G intended to continue its relationship with Plaintiff, and that relationship would remain constant regardless of which company Plaintiff was assigned to for any temporary time period. Despite Tetra's attempts to argue around this point, the Court finds this factor suggests against a finding of borrowed employee status.

6. Who Furnished the Tools and Place of Performance?

Tetra furnished the place of performance and the major tools Plaintiff used on the job. Plaintiff provided his own welding shield, hard hat, safety glasses, steel-toe boots, safety glasses, chaps, and welding jacket. The Court finds this factor favors Tetra.

7. Was the New Employment over a Considerable Length of Time?

Plaintiff worked for C & G for approximately 9 months prior to the accident.  During that time, the vast majority of his assignments were with Tetra.  However, Plaintiff could be, and in fact was, assigned to other companies as needed by his employer C & G.  "[W]here the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee; however, the converse is not true."  Capps v. N.L. Baroid-NL Indus., 784 F.2d 618, 618 (5th Cir. 1986).  Some courts have found when a short period of time is alleged that this factor is neutral. See, e.g., Brown v. Union Oil, 984 F.2d 674, 679 (5th Cir. 1993). The Court finds the relatively short length of Plaintiff's assignments with Tetra combined with the fact that the length was completely subject to the needs of Plaintiff's direct employer C & G slightly favors Plaintiff on this issue.

8. Who Had the Right to Discharge Plaintiff?

It is undisputed that Tetra had the authority to discharge Plaintiff with respect to his services to Tetra, but not from his employment with C & G.  The Fifth Circuit has found similar situations supported a finding of borrowed employee status.  Brown, 984 F.2d at 678.[1]  Accordingly, the Court finds this factor favors

---

[1] Plaintiff quotes Robinson, "there is no question that a business owner has the right to ask any person, whether that person is doing work on the premises merely visiting the facility for some other reason, to leave.  However, that is not the question this factor asks.  The plaintiff was an employee of his [direct employer] and could only be discharged by [his direct employer]."  Robinson, 2004 WL 2297469, at * 4.  The Court notes

finding borrowed employee status.

### 9. Who Had the Obligation to Pay Plaintiff?

It is undisputed that C & G paid Plaintiff's wages, that it did so at an hourly rate based on his time sheets, and that the hourly rate was the same at all jobs. It is further undisputed that Plaintiff's pay while he performed work for Tetra was based on time reported by Tetra to C & G. In other cases in which a "borrowing" employer has provided information regarding or verification of an employee's time worked, the Fifth Circuit and other district courts within the Circuit have found this factor favors borrowed employee status. See, e.g., Alexander v. Chevron, 806 F.2d 526, 528 (5th Cir. 1986); Brown, 984 F.2d at 678; Velasco v. Amfels, Inc., 368 F. Supp. 2d 656, 660 (S.D. Tex. 2005). Accordingly, the Court concludes this factor favors borrowed employee status.

For the foregoing reasons, and in the absence of any genuine issue of material fact, this Court concludes the balance of the nine factors considered in determining borrowed employee status favors Tetra and supports a finding of borrowed employee status. Accordingly,

---

the Robinson court considered an argument regarding the "borrowing" companies ability to "halt any work being performed on its premises and ask any worker to leave its facility at any time." Id. The Court notes the Robinson court carefully avoided phrasing about terminating an employment relationship and therefore declines to apply its reasoning here.

Tetra's Motion for Summary Judgment (Rec. Doc. No. 65) is **GRANTED**.

New Orleans, Louisiana, this 30th day of August, 2006.

UNITED STATES DISTRICT JUDGE